UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, INC., ET AL. | CIVIL ACTION |
| VERSUS | NO: 10-1882 |
| DEB HAALAND, SECRETARY OF THE DEPARTMENT OF THE INTERIOR, ET AL. | SECTION: "A" (2) |

## ORDER AND REASONS

The following motion is before the Court: **Motion to Retain Jurisdiction (Rec. Doc. 179)** filed by Intervenor-defendant Chevron U.S.A., Inc. The plaintiffs, Natural Resources Defense Council, Center for Biological Diversity, Gulf Restoration Network, and Sierra Club, oppose the motion. The motion, submitted for consideration on May 26, 2021, is before the Court on the briefs without oral argument.[1]

Plaintiffs filed this action in June 2010 to challenge the United States Bureau of Ocean Energy Management, Regulation, and Enforcement's July 1, 2004, decision to issue a Finding of No Significant Impact for geological and geophysical exploration for mineral resources in the Gulf of Mexico Outer Continental Shelf, its conclusion that no Environmental Impact Statement ("EIS") was required to assess the impact of such exploration activities under the NEPA, its continued failure to produce an EIS notwithstanding significant new information indicating that a full NEPA review is

---

[1] Chevron has requested oral argument but the Court is not persuaded that oral argument would be helpful in light of the issues presented.

1

required, and its decision to allow exploration to go forward without any mitigation before an EIS is complete. Plaintiffs, who are various environmental groups, complain that seismic surveys, which typically involve an array of airguns towed behind ships, are detrimental to the ocean's acoustic environment and to marine animals. Shortly after the case was filed, various trade associations in the oil and gas industry were permitted to intervene (Rec. Doc. 31, Order), as was the current movant Chevron U.S.A., Inc. (Rec. Doc. 46, Order).

In November 2010, the Court granted a joint motion to stay this matter for 90 days while the parties engaged in settlement negotiations. (Rec. Docs. 51 & 52, Motion & Order). Over the next three years the Court extended that pre-settlement stay order numerous times, and on June 20, 2013, the parties filed their joint motion for approval of their settlement agreement; the detailed settlement agreement is found in the record at document # 118-2 (hereinafter "the Settlement Agreement"). Shortly, thereafter the Court approved the settlement, and stayed the case once again, this time in accordance with the terms of the Settlement Agreement. (Rec Doc. 119, Order). Chevron is a signatory to the Settlement Agreement. (Rec. Doc. 118-2 at 37). The Settlement Agreement was amended five times over the last decade. Upon the "Final Action" requirement being satisfied, the Settlement Agreement required that Plaintiffs file a notice of dismissal of this action pursuant to Federal Rule of Civil Procedure 41; that dismissal was to be with prejudice. (Settlement Agreement ¶ III.A).

On April 26, 2021, Plaintiffs filed the dismissal notice required by paragraph III.A of the Settlement Agreement. (Rec. Doc. 175). Before the Court could sign and enter the proposed order that Plaintiffs included with their notice, Chevron filed the instant

Motion to Retain Jurisdiction for the Purpose of Enforcing the Terms of the Settlement Agreement (Rec. Doc. 179). Chevron seeks to have the Court include the following statement in the dismissal order: "The Court shall retain jurisdiction to adjudicate any disputes that may arise over the Settlement Agreement until November 1, 2021."

Chevron points out that the Settlement Agreement extends certain key protections to the Intervenor-defendants (such as Chevron) beyond the mere dismissal of the action, and that the Settlement Agreement provides that this Court will resolve any disputes relating to those protections. Chevron suggests that the Court should retain jurisdiction over the Settlement Agreement during the initial six-month period that the Final Rule giving rise to dismissal of this action is being implemented.[2] Chevron contends that without such a retainer as to jurisdiction it may lose some of the bargained-for aspects of the settlement. Chevron points out that the dismissal is being effected pursuant to Rule 41(a)(2), which means that the dismissal is "on terms that the court considers proper." Fed. R. Civ. Pro. 41(a)(2). Chevron contends that principles of judicial economy and efficiency militate in favor of the court that presided over this case for more than a decade being the one to resolve any disputes that arise in the future.

Plaintiffs characterize Chevron's motion as an attempt to rework the parties' settlement because Chevron did not request the modification that it now seeks on the numerous occasions that the Settlement Agreement was amended over the years. Moreover, Plaintiffs argue that Chevron's requested modification contravenes an

---

[2] Chevron explains that it alighted upon the November 1, 2021 date because most of the permitting related activities at issue under the Settlement Agreement should be completed over the next few months, which is the initial implementation period of the Final Rule that gave rise to the dismissal.

3

express term of the Settlement Agreement, which requires that the Settlement Agreement shall be enforceable against Plaintiffs "solely in this Court <u>through an action for breach of contract</u> under federal contract law . . . ." (Settlement Agreement ¶ XI.E) (emphasis added).³

The Court is persuaded that Chevron's request, appropriately tailored, will not contravene the terms of the Settlement Agreement and moreover will give effect to certain aspects of the Settlement Agreement.

First of all, the post-dismissal "new" lawsuits referenced in Paragraph III.A of the Settlement Agreement constitute neither bargained for provisions in favor of Chevron nor a dispute arising out of the terms of the Settlement Agreement. Paragraph III.A expressly states that any post-dismissal lawsuits as described in that section are "new" and must be brought via a separate action. The Court does not consider the new and separate lawsuits alluded to in the paragraph to be at issue for the retention of jurisdiction that Chevron seeks.

Second, Chevron points out that Paragraphs III.B and III.C of the Settlement Agreement create obligations in favor of Chevron that survive dismissal. Paragraph III.B prohibits Plaintiffs from filing or funding any lawsuit or formal administrative action challenging certain specifically described seismic survey permits. And Paragraph III.C

---

³ As Chevron points out in its reply, Plaintiffs' legal arguments regarding ancillary jurisdiction are based on standards that apply to stipulated dismissals under Rule 41(a)(1)(A)(ii), which is not applicable here. Likewise, the Rule 41(a)(1)(A)(i) requirements that would allow for a "notice" of dismissal without a court order are not satisfied because the opposing parties have answered the lawsuit. The requirements imposed by Rule 41(a)(1)(A)(i) are not eliminated simply because the Settlement Agreement refers to a "notice of dismissal." Plaintiffs clearly understood this because they included a proposed order for the Court's signature as part of their notice of dismissal. (Rec. Doc. 175-1).

prohibits Plaintiffs from encouraging or assisting any other person (in other words, non-parties to this action) who files a lawsuit that Plaintiffs would be prohibited from filing themselves under Paragraph III.B. If Paragraph III.C. is breached (encouraging or assisting others to do what Plaintiffs cannot do directly) then the sole remedy is the curative letter provided as Exhibit 3C to the Settlement Agreement. This remedy does not involve Court intervention. The Court does not consider the potential problems alluded to in the paragraph to be at issue for the retention of jurisdiction that Chevron seeks.

Paragraph III.B, which again prohibits Plaintiffs from filing or funding any lawsuit or formal administrative action challenging certain specifically described seismic survey permits, is an important bargained for provision in favor of Chevron but it does not provide for a stipulated remedy like Paragraph III.C does. Therefore, Paragraph XI of the Settlement Agreement, entitled Dispute Resolution, Enforceability, and Modification, must be considered:

> **A.** In the event of a dispute arising out of or relating to this Agreement, including a dispute over any asserted violation of any term of the Agreement or an asserted need to modify the Agreement or to terminate or extend the Stay, the Party raising the dispute shall provide the other Parties with notice of the dispute. The Parties agree that they will meet and confer (telephonically or in person) within seven calendar days after notice is provided in a good-faith effort to resolve the claim before seeking relief from the Court. <u>If the Parties are unable to resolve the dispute themselves, the Party raising the dispute may move for appropriate relief from the Court consistent with the terms of this Agreement. Briefing on any such motion shall proceed in accordance with the Local Rules of the United States District Court for the Eastern District of Louisiana.</u>

Settlement Agreement ¶ XI.A (emphasis added).

This provision envisions an aggrieved party having the ability to motion the Court for redress, and the provision clearly anticipates venue in this district. And the Court interprets the reference to "the Court" to mean this presiding judge. Yet if the Court were to approve the dismissal order proposed by Plaintiffs with their notice of dismissal, which contains no provision for retaining jurisdiction, the Court in all likelihood would not have jurisdiction to entertain a motion for such relief. At the very least a lot of time and resources would be wasted litigating the issue before even getting to the issue of relief. Thus, to give effect to this particular paragraph, in which the parties clearly manifested an intent to have this Court adjudicate disputes arising out of or related to the Settlement Agreement, a retention of subject matter jurisdiction would be necessary.

That said, subpart E of that same Paragraph states:

> **E.** Except to the extent provided by paragraphs II.C, II.G, and III.C above, <u>this Agreement shall be enforceable against Intervenor-Defendants</u> and Plaintiffs <u>solely in this Court</u> <u>through an action for breach of contract under federal contract law</u>, and remedies shall be limited to injunctive relief, including but not limited to specific performance.

Settlement Agreement ¶ XI.E (emphases added).[4]

This provision seems to be at odds with Paragraph XI.A because rather than raising disputes via a motion to the Court, this provision refers to an "action" for breach of contract although it does not refer to a "separate" action as did Paragraph III.A. But two things are clear from this provision. Ignoring for the moment Paragraph XI.A and assuming that this provision requires enforcement through the filing of a new lawsuit, it is clear that the parties intended that the new lawsuit be filed in this district. If a new

---

[4] The exceptions alluded to in paragraphs II.C and II.G are no longer relevant now that Final Action has been satisfied. The exception in Paragraph III.C regarding the curative letter has

6

lawsuit is filed in this district to enforce the Settlement Agreement it will be assigned a new civil action number and randomly allotted to a district judge, which most likely would not be the current presiding judge. Under Local Rule 3.1.1 of this district, the case would not be heard by a new judge and the new judge would be forced to enter an order reassigning the case to the Court's docket. In light of Local Rule 3.1.1, no other judge in this district would preside over an action pertaining to a settlement entered in a case that another judge presided over for more than a decade. The concerns regarding judicial economy and efficiency that Chevron raises are certainly implicated here.

But even more important to the matter at hand, the parties refer to "federal contract law" as the basis for the action so they clearly intended that there be subject matter jurisdiction in a federal court to adjudicate the new action. But of course "federal contract law" does not exist so it cannot be a basis to confer either federal question or diversity jurisdiction on a federal court. Thus, to give effect to Paragraph XI.E, in which the parties clearly manifested an intent to have a federal court (in fact this one) adjudicate enforcement actions arising out of or related to the Settlement Agreement, a retention of subject matter jurisdiction would be necessary.

The Court notes that Paragraph III of the Settlement Agreement, entitled Dismissal of the Lawsuit, gives no particulars as to the content of the dismissal order except that it refers to a "notice of dismissal" under Rule 41, which as the Court has already explained, cannot apply in this case. See footnote 3 above. Thus, a limited retainer of jurisdiction of the nature suggested by Chevron does not contravene the dismissal provision of the Settlement Agreement.

---

already been discussed above.

In sum, the Court will grant Chevron's motion and include a retention of jurisdiction as part of the dismissal order to be entered in this case. This retention of jurisdiction simply ensures that there will be no issues with subject matter jurisdiction if an enforcement action or dispute adjudication becomes necessary. And of course the retention of jurisdiction does not affect the new and separate lawsuits expressly excepted in the Settlement Agreement (as amended) and described by Plaintiffs in the notice of dismissal.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Retain Jurisdiction (Rec. Doc. 179)** filed by Intervenor-defendant Chevron U.S.A., Inc. is **GRANTED** as explained above. The Court will modify the proposed order of dismissal (Rec. Doc. 175-1) to include a limited retention of jurisdiction before signing and entering it.

June 2, 2021

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE